DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas which, following a trial to the bench on January 27, 2005, awarded appellee, Norman Enterprises, Inc., $21,157.54 against appellant, Main Street Ventures, Inc. ("MSV"), for outstanding balances due for labor and materials *Page 2 
incurred by appellee during the construction of Stixx Asia Bistro ("Stixx").[1] Appellant appeals the September 19, 2006 judgment of the trial court and raises the following assignments of error:
 {¶ 2} 1. "Whether the lower court erred when it held that Main Street Ventures, Inc. contracted with plaintiff for work on the `[Stixx]' project."
 {¶ 3} 2. "Whether the lower court erred when it failed to credit defendant Main Street Ventures, Inc. for overpayment of labor expenses and for plaintiffs double-billing and therefore awarded plaintiff approximately $21,150 based on unjust enrichment."
 {¶ 4} According to the evidence presented at trial, appellee was hired by Michael Gibbons to renovate a former Bill Knapp's restaurant in Sylvania, Ohio. Gibbons was the president of MSV and a managing member of GSP — Monroe Street Restaurant, L.L.C. ("GSP"), an Ohio corporation, registered on October 30, 2002. MSV's principal place of business was in Ann Arbor, Michigan. Gibbons testified that MSV was the management company for Stixx, but that each restaurant managed by MSV was a separate legal entity. With respect to Stixx, Gibbons testified that the property was owned by 5839 Monroe Street Associates, L.L.C, but that GSP was the restaurant owner.
 {¶ 5} Appellee had done previous construction work for other restaurants managed by MSV, such as Zia's and Real Seafood Company. Appellee and Gibbons orally agreed that appellee would be paid as he had on the other jobs. Daniel Dessum, *Page 3 
appellee's president, testified that the per hour rate was $55 for management and $45 for subcontractors, carpenters, and general laborers in his employ. Gibbons testified that the agreement was a rate of $55 per hour for management, but that all other costs were supposed to be passed through without markup.
 {¶ 6} Throughout the project, appellee submitted invoices for materials and labor directly to Gibbons, or faxed them to MSV's office in Ann Arbor, Michigan. The invoices charged $55 per hour for management and $45 for contractor services. The contractors for the project were Deacon Mitchell and Scott Keefe. At times, Mitchell's time was also billed at $55 per hour for management duties. The work performed by Dan Dessum and his father, Norm Dessum, were invoiced exclusively at the $55 management rate. Although appellee carried liability insurance and provided tools for the workers, it did not treat any of the workers as employees for purposes of worker's compensation, or otherwise.
 {¶ 7} Dessum testified that, although appellee submitted invoices for $45 per hour for Keefe and Mitchell's labor hours, they only received $25 per hour from appellee. Gibbons, however, testified that Keefe informed him that Keefe and Mitchell only received $20 per hour from appellee. Norm Dessum, who always acted in a management capacity, received $35 per hour from appellee. Dessum testified that there was a total balance due of $14,410.04 for materials, and $14,972.50 for labor. MSV, however, argued that it was not the proper defendant because appellee contracted with GSP for the construction project, not MSV, and that because Keefe, Mitchell, and Norm Dessum were *Page 4 
not appellee's employees, the hourly rate paid to them by appellee should have been passed through, not increased to $45, or $55, per hour, respectively.
 {¶ 8} The trial court found that MSV breached its oral contract with appellee, but that appellee over-billed for labor furnished, thereby awarding appellee $21,157.54 of the $29,382.54 it requested at trial ($14,410.04 for materials and $14,972.50 for labor). In rendering its decision, the trial court made the following findings of fact which are pertinent to this appeal:
 {¶ 9} "1. In December 2002, Defendant, Main Street Ventures, Inc., by and through its president and representative, Michael C. Gibbons, entered into an oral contract with Plaintiff, Norman Enterprises, Inc., by and through its representative, Daniel Dessum, whereby the Plaintiff agreed to perform certain managerial services and construction related services in the form of improvements and renovations at the commercial restaurant premises known as Stixx Asia Bistro located in Sylvania, Ohio.
 {¶ 10} "2. The terms of the oral agreement entered into by and between the parties for the Stixx Project were the same or similar as was done with all of the previous orally contracted jobs entered into by and between the parties which are as follow: (1) Compensation to Plaintiff for its management skills and services at its normal and customary rate of $55.00 an hour; (2) Compensation for all laborers hired by and working under Plaintiff at $45.00 an hour; (3) All other costs would be passed through by Plaintiff directly to Defendant, including labor and material costs and whatever other costs were incurred; and, (4) the Defendant would pay those expenses directly. *Page 5 
 {¶ 11} "3. Plaintiff performed and completed all of its obligations under the contract. The Defendant failed to adequately compensate Plaintiff for the work performed and completed and to reimburse Plaintiff for various invoices for suppliers, materialmen [sic], labor, and materials that were prepaid by Plaintiff in accordance with it's [sic] contractual agreement with the Defendant for the benefit of the Defendants. * * *
 {¶ 12} "5. * * * the Defendant has been unjustly enriched. * * *
 {¶ 13} "9. MSV manages and provides services to fifteen (15) restaurant entities in Michigan, Ohio, West Virginia, and Florida. Each restaurant is owned and operated by a separate legal entity from MSV. In addition, the real estate for each restaurant is owned by a separate legal entity from MSV. * * *
 {¶ 14} "15. There was an overpayment of $8,225.00 to worker Scott Keefe.
 {¶ 15} "16. As an accommodation to Plaintiff, MSV did initially make payments to Plaintiff earlier in the project. These advances were booked as a loan from MSV to GSP and/or [Stixx]. Each restaurant entity, including [Stixx], was operated as a separate entity from MSV. Separate banks and records are maintained for each entity.
 {¶ 16} "17. As soon as GSP and/or [Stixx's] financing was in place, MSV was repaid for these advances and Plaintiff was thereafter paid by [Stixx].
 {¶ 17} "18. Plaintiff has done construction work for other restaurants affiliated with MSV in the past. MSV presented evidence that during the construction of Zia's Restaurant in Toledo, Ohio, Plaintiff was paid by Zia's." *Page 6 
 {¶ 18} MSV asserts in its first assignment of error that the trial court erred in determining that appellee contracted with MSV for the work to be done at Stixx. MSV argues that the agreement was for appellee to be paid as it had been on previous jobs, which was by the respective restaurant entities, not by MSV. MSV asserts that the trial court's decision that MSV contracted with appellee for the work to be done was not supported by the record and was contradictory to the trial court's other findings of fact. Specifically, MSV notes that the trial court found that, as an accommodation to appellee, MSV initially made payments to appellee until GSP obtained its own bank account and financing; that MSV and GSP were distinct legal entities; that the payments advanced by MSV were "booked" as loans from MSV to GSP and were later repaid; and that appellee was paid by Zia's, not MSV, on a previous construction project. MSV also argues that the fact that appellee's invoices refer to Stixx, not MSV, demonstrates that Stixx/GSP, was the actual contracting party, not MSV.
 {¶ 19} On appeal, "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." CE. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus. An appellate court must give great deference to the decision of the trial court, must not substitute its own judgment for that of a trial court, and must be guided by a presumption that the findings of the trier-of-fact were indeed correct. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. This deference "rests with the knowledge that the trial judge is best able to view the witnesses *Page 7 
and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id.
 {¶ 20} Upon a thorough review of the record, we find that there was some competent, credible evidence upon which the trial court could have relied in determining that MSV had contracted with appellee for the construction work at Stixx. In particular, we find that MSV held itself out as the contracting party by (1) requesting that proposals be submitted to "Main Street Ventures" at its Ann Arbor, Michigan address from companies such as Air Concepts and Fire-X; (2) requesting that invoices not handed directly to Gibbons be faxed to MSV's office in Ann Arbor; and (3) paying appellee for the first three months of the job. Additionally, although the trial court found that the payments by MSV to appellee were, in fact, loans to GSP, we find that there is no evidence that Dessum knew that MSV considered the payments to be loans, rather than direct payments for services rendered, or that the payments from MSV were merely done as an accommodation during the interim. We further find that although the invoices did not reference MSV, only "Stixx, Sylvania, Ohio," Dessum testified that he believed he had contracted with MSV and that he referenced the project as "Stixx." We recognize that Gibbons testified that he had no intention of contractually obligating MSV for appellee's services; however, as the trier-of-fact, the trial court found in favor of appellee on this issue. Because there is competent, credible evidence to support the trial court's finding, we will not overturn its judgment in this regard. *Page 8 
 {¶ 21} Accordingly, we find that the trial court's finding that MSV contracted with appellee for the construction work on the Stixx project was supported by the record and that the trial court's ruling was not contradictory to its findings of fact. MSV's first assignment of error is therefore found not well-taken.
 {¶ 22} MSV argues in its second assignment of error that the trial court erred in failing to credit MSV for overpayment of labor expenses with respect to all workers, not just Keefe, and for failing to credit MSV for appellee's double-billing for materials. We agree, in part, with respect to appellee's labor expenses, but disagree with respect to the amount owing for materials.
 {¶ 23} The trial court did not credit MSV for any over-billing of management fees, and only credited MSV with an over-billed amount for Keefe, who was paid $20 per hour by appellee,[2] although appellee invoiced MSV at $45 per hour. Initially, with respect to the management fees, we find that the trial court's decision was supported by some competent, credible evidence in the record. Gibbons testified that the agreement with appellee was that, other than management, all costs would be passed through. Throughout the job, invoices were submitted for Dan Dessum, Norm Dessum, and Deacon Mitchell at the $55 per hour management rate. Gibbons testified that he was unaware that more than one individual would be invoiced at the higher managerial rate; however, Dessum testified that multiple managers were sometimes required to oversee *Page 9 
different aspects of the project simultaneously. The trial court apparently agreed with appellee that its charges for managerial expenses were necessary. We therefore affirm the trial court's decision in this regard.
 {¶ 24} With respect to the labor expenses, however, we agree with MSV that there is a discrepancy with the trial court's decision to award a credit to MSV for over-billing of Keefe's labor expenses, but not Mitchell's. Neither Keefe nor Mitchell were appellee's employees. Pursuant to the agreement described by both Dessum and Gibbons, the expenses for laborers not in appellee's employ were to be directly passed through. MSV therefore received a $8,225 credit with respect to Keefe, whose 329 hours of labor were billed at $45 per hour, although he received only $20 per hour. Although Mitchell was in the exact position as Keefe, MSV did not receive a credit for Mitchell's over-billings. MSV was invoiced at $45 per hour for 418.5 laborer hours work by Mitchell throughout the project. According to Dessum, however, Mitchell was only paid $25 per hour. As such, we find that MSV should be credited $8,370, which represents a $20 per hour credit for the amount MSV was over-billed for Mitchell's laborer hours.[3]
 {¶ 25} With respect to appellee's materials list, we find that the trial court's decision was supported by some competent, credible evidence in the record. MSV argues that appellee double-billed for certain materials as evidenced in defendant's exhibit *Page 10 
No. 12, which showed a balance due of $16,208.20. Dessum, however, agreed that exhibit No. 12 contained errors and testified that he was relying on plaintiffs exhibit No. 2 for the calculation of the outstanding balance due for materials, which totaled only $14,410.04. We find that MSV did not establish that any of the billings on exhibit No. 2 were double-billed or over-billed. Accordingly, we affirm the trial court's decision in this regard.
 {¶ 26} Based on the foregoing, we affirm the trial court's decision with respect to its award for management fees and materials; however, we reverse with respect to the trial court's award for laborer fees as they relate to Mitchell. We therefore find MSV's second assignment of error well-taken, in part, and not well-taken, in part.
 {¶ 27} On consideration whereof, this court finds that the decision of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. Pursuant to App.R. 12(B), this court enters judgment in favor of appellee, Norman Enterprises, Inc., and against appellant, Main Street Ventures, Inc., in the sum of $12,787.54, with costs. Appellant and appellee are each ordered to pay one-half of the cost of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART. *Page 11 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
[1] The restaurant name is spelled throughout the record as "Styx," "Stix," and "Stixx", but for continuity will be referred to herein as "Stixx."
[2] Dessum testified that Keefe received $25 per hour; however, the trial court apparently accepted as true Gibbon's testimony that Keefe only received $20 per hour.
[3] Gibbons testified that Mitchell was only paid $20 per hour; however, he had no first-hand knowledge of this fact and was relying on out-of-court statements made to him by Keefe. As such, the only relevant testimony presented at trial was that Mitchell was paid $25 per hour by appellee. *Page 1